**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | **CRIMINAL NO. 16-10134-DPW** |
| ) | |
| **DAVID TKHILAISHVILI** ) | |

### DEFENDANT DAVID TKHILAISHVILI'S MOTION IN LIMINE

Defendant David Tkhilaishvili ("Tkhilaishvili") moves to preclude the government from introducing transcripts of recorded conversations between himself and the complaining witness in this case, John Doe A, on November 25 and 30 of 2015.

David Tkhilaishvili and his brother Jambulat ("James") Tkhilaishvili have been charged with conspiracy to commit extortion and attempted extortion in violation of the Hobbs Act, 18 U.S.C. § 1951. David Tkhilaishvili has also been charged with two counts of embezzlement from a health care program, in violation of 18 U.S.C. § 669(a).

The defendants in this matter were born in the Republic of Georgia. The complainant, identified in the Indictment as John Doe A, in the Republic of Armenia.  On April 7, 2017, defense counsel received two transcripts of recorded conversations between Mr. Tkhilaishvili and John Doe A in November of 2015 that the government allowed John Doe A to review and edit.   The government represented to counsel that the changes he made were not significant.   Defense counsel notified the government from the moment these edited transcripts were disclosed that he was not agreeing to their admission into evidence unless an independent translator/linguist reviewed John Doe A's changes and attested to their accuracy. At the pretrial conference held in this matter on Wednesday April 26, 2017, defense counsel notified the Court that he had not yet received word

from the government that any independent translator/linguist had conducted such a review and stated that his agreement that the transcripts were accurate was contingent on this confirmation.

In conducting a further review of the amended transcripts, defense counsel noted that there were many changes made by John Doe A to the original translation of the recordings by independent linguists that fundamentally changed the context of certain passages and ultimately made Mr. Tkhilaishvili's general replies more violent in tone.  This case concerns allegations of extortionate threats of violence made by Mr. Tkhilaishvili and his brother against John Doe A and the result of the government's ill-advised attempts to provide clarity in the translation of conversations that utilized words from three different languages is an opportunity for John Doe A to clarify phrasing and context in a totally subjective manner.  That the government allowed the complaining witness to participate in the process of clarifying these transcripts at all is troubling and it also speaks to their level of confidence in the accuracy of the original translations.

As examples of the manner in which John Doe A's edits have caused Mr. Tkhilaishvili's responses to sound more violent in nature, defense counsel attaches Addendum A below.  In this Addendum the Court can clearly see the changes that John Doe A made and their clear effect on the tone of the passages.  Moreover, in the example from the November 25, 2015 transcript, John Doe A removes an entire phrase from the original transcript where Mr. Tkhilaishvili states that he doesn't beat people up and simply "talks" and not much more.  The clear result is that words are removed by John Doe A in the editing process that potentially make Mr. Tkhilaishvili sound less violent or threatening.  In the example from the November 30, 2015 transcript, John Doe A replaces the word "drunk" with "shoot" repeatedly.  There are many more examples of these biased changes throughout these transcripts.  It is obvious that the cumulative effect of these edits by John Doe A is to cast Mr. Tkhilaishvili as an even more volatile person than what is presented in the

original transcripts.   This is outrageously unfair to Mr. Tkhilaishvili as he was not given a similar opportunity to edit these transcripts himself and attempt to correct mistakes and provide clarity and context to what he said.   As a practical matter, neither the complaining witness nor the defendants in this case should be allowed to determine translations in such a unilateral and unchecked manner.

Defense counsel finally did receive word on April 30, 2017, that an independent translator/linguist had reviewed the edits that John Doe A had made.   However, AUSA Laura Kaplan stated to defense counsel in an email that John Doe A was "able to hear things that were said that the translator could not."   Defense counsel took that to mean that John Doe A's editing took precedence over that of the independent translator. This representation from the government gives defense counsel no measure of comfort and is, in fact, disturbing.   An interested party in this case cannot be allowed to resolve any questions regarding the accuracy of these transcripts in such a manner.   Defense counsel does not, however, contest the accuracy of the original drafts of the transcripts provided in discovery. The government represented to defense counsel that John Doe A had no role in creating those translations or in editing the work of independent translator/linguists.

## Conclusion

For the foregoing reasons, defendant David Tkhilaishvili respectfully requests that the Court preclude the government from introducing the transcripts of these recorded conversations which John Doe A was allowed to edit.

DAVID TKHILAISHVILI
By His Attorney,
*/s/Oscar Cruz, Jr.*
Oscar Cruz, Jr.
B.B.O. #630813
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA   02210
Tel: 617-223-8061

## CERTIFICATE OF SERVICE

  I, Oscar Cruz, Jr., hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on April 30, 2017.

               _/s/Oscar Cruz, Jr._
               Oscar Cruz, Jr.

Addendum A

11/25/2015 Transcript Translation, Page 55

| Speaker | Original | Exhibit |
| --- | --- | --- |
| DT | Wait, wait. No one is scared of me. Everyone knows my personality. Those who know and everyone knows how to do everything. **I just say things, but I don't beat anyone up** and I don't do anything to anyone. | Wait, wait. No one is scared of me. Everyone knows my personality. Those who know and everyone knows how to do everything. **I don't beat anyone up for nothing** and I don't do anything to anyone. |

11/30/2015 Transcript Translation, Page 3

| Speaker | Original | Exhibit |
| --- | --- | --- |
| DT | [OV] There should not be even one *complaint*. God forbid, [UI] the person has 40% and **someone gets him drunk [PH]. It will be fucked up!** | [OV] There should not be even one *complaint*. God forbid, tomorrow the person has 40% and **he will shoot someone**. |
| VT | Who will **get him drunk**? | Who will **he shoot**? |
| DT | Let's say, Jaba. For example | Let's say, Jaba. For example. |
| VT | Jaba? Well, tell him he can't **get people drunk**. | Jaba? Well, tell him he can't **shoot people**. |
| DT | I know that, but his brain is not working. If the person, uh… Anyways, uh… I told him just that, man. I told you a hundred times already. It has been that the person was close by and [UI] …do it together and then see what-- | I know that, but his brain is not working. If the person, uh… Anyways, uh… I told him just that, man. I told you a hundred times already. It has been that the person was close by and [UI] …do it together and then see what-- |
| VT | [OV] Tell me why there uh… You're saying that he'll **get drunk**. Why should **he get drunk**? Tell him, "Well, man, are you crazy or what?" | [OV] Tell me why there uh… You're saying that he'll **shoot**. Why should **you shoot**? Tell him, "Well, man, are you crazy or what?" |