1                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
2

3

4    UNITED STATES OF AMERICA            )
                                         )
5                                        )
     vs.                                 )
6                                        )  No. 1:16-cr-10134-DPW
                                         )
7    DAVID TKHILAISHVILI AND             )
     JAMBULAT TKHILAISHVILI,             )
8                                        )
                      Defendants.
9


10

11   BEFORE:  THE HONORABLE DOUGLAS P. WOODLOCK

12

13            EXCERPT FROM DAY ONE OF JURY TRIAL
                  (EXCLUDES JURY SELECTION)

14

15

16        John Joseph Moakley United States Courthouse
                       Courtroom No. 1
17                    One Courthouse Way
                      Boston, MA 02210
18                  Monday, May 1, 2017

19

20

21            Brenda K. Hancock, RMR, CRR
                  Official Court Reporter
22        John Joseph Moakley United States Courthouse
                      One Courthouse Way
23                    Boston, MA 02210
                      (617)439-3214
24

25

1     APPEARANCES:

2

3         UNITED STATES ATTORNEY'S OFFICE
         By: AUSA Laura Kaplan
         John Joseph Moakley Federal Courthouse

4         1 Courthouse Way
         Suite 9200

5         Boston, MA 02210
         On behalf of The United State of America.

6

7         FEDERAL PUBLIC DEFENDER OFFICE
         By: Oscar Cruz, Jr., Esq.

8         District of Massachusetts
         51 Sleeper Street

9         5th Floor
         Boston, MA 02210

10        On behalf of the Defendant.

11

12        HEDGES & TUMPOSKY, LLP
        By: Michael L. Tumposky, Esq.

12        Suite 600
        50 Congress Street

13        Boston, MA 02109

14

15

16

17

18

19

20

21

22

23

24

25

                              EXCERPT:

1          THE CLERK:  All rise.

2      (The Honorable Court entered the courtroom at 9:09 a.m.)

3          THE CLERK:  This Honorable Court is now in session.

4  Please be seated.  Criminal Action Number 16-10134, United

5  States v. Tkhilaishvili.

6              Nana, please raise your right hand.

7              (Interpreter duly sworn by the Clerk)

8              THE CLERK:  Please be seated.

9              THE COURT:  Well, I am a little concerned about the

10  representations the parties have made about the length of the

11  trial, so I want to settle that first.  I understand this to be

12  a one-week trial, 9:00 to 1:00.  Now I am told that it is going

13  to go longer.  So, what's up?

14              MS. KAPLAN:  I have no idea that it is going to go

15  longer than that.

16              THE COURT:  The Government has 26 witnesses.

17              MS. KAPLAN:  Just because I thought it would be best

18  to mention those witnesses' names just in case, your Honor.

19              THE COURT:  How long is the Government's case going to

20  take?

21              MS. KAPLAN:  I think three days, maybe four days.

22              THE COURT:  All right.  And do you have witnesses

23  today?

24              MS. KAPLAN:  I will, yes.  But there is an issue as a

1    result of --

2              THE COURT:  I will take up the issues later.

3              MS. KAPLAN:  Okay.

4              THE COURT:  But you had better have people on deck,

5    ready to go.

6              MS. KAPLAN:  They are.

7              THE COURT:  Okay.  So, from the defendant's point of

8    view, how long?

9              MR. CRUZ:  Your Honor, if the Government takes the

10   amount of time it has represented, we would probably need two

11   days for our witnesses, two to three days for our witnesses.

12             THE COURT:  Two to three days?

13             MR. CRUZ:  Yes, your Honor.  I don't want to tell the

14   Court two days and then whatever happens in terms of time, if

15   we are doing 9:00 to 1:00 --

16             THE COURT:  No, I want an accurate -- this is not

17   coddling the judge.  This is giving me accurate information I

18   can give to the jury.  We are past the point at which we deal

19   with the conceits and crotchets of the lawyers.  I tried to get

20   a clear understanding of what the case was going to do, how

21   long it was going to be.  It seems to me that I had not gotten

22   a clear understanding of it.  Now I have got a group of people

23   who are forced to come in here --

24             MR. CRUZ:  Yes, your Honor.

25             THE COURT:  -- to sit as jurors, and I want to give

1    them an accurate indication of what their obligation is going

2    to be.  So, now, based on this, I am going to say that the case

3    is perhaps going to slip into next week --

4                 MR. CRUZ:  Yes, your Honor.

5                 THE COURT:  -- to the jury, and we will deal with it

6    when we can.  You can be assured that I will be of considerable

7    assistance in expediting the case.

8                 MR. CRUZ:  I understand that, your Honor.  I

9    understand that.

10                THE COURT:  So, now the question becomes do we take

11   all day tomorrow?  Is the Government ready to go with witnesses

12   all day tomorrow?

13                MS. KAPLAN:  Yes.

14                THE COURT:  That will get the case moving along?

15                MS. KAPLAN:  That's fine.

16                THE COURT:  Okay.  We are going to take all day

17   tomorrow for it.

18                MR. CRUZ:  All right.

19                THE COURT:  Now, turning to one other factor, if there

20   are going to be additional people sitting at the table -- I do

21   not know your colleague, Mr. Cruz.

22                MR. CRUZ:  Yes, your Honor.

23                THE COURT:  I just like to introduce people.  Maybe

24   Ms. Beatty has already done it, but I like to introduce people

25   who are likely to be in the courtroom on a regular basis.

1          MR. CRUZ:  That's fine, your Honor.

2          THE COURT:  And I guess Ms. Beatty has your

3     colleague's name.

4          MR. CRUZ:  Yes, your Honor.  Thank you.

5          THE COURT:  And will there be an agent sitting at the

6     table?

7          MS. KAPLAN:  Yes.  She just went to the restroom, and

8     I have given Ms. Beatty her name as well.

9          THE COURT:  Okay.  I think she has come back in.  So,

10    those are the folks that I will introduce in the ordinary

11    course during the course of the trial.

12          Now, let me turn to the late-filed motions *in limine*,

13    and I want to be sure that I have gotten a clear understanding

14    from the parties of what it is that they want me to be doing,

15    and I suppose I should start just in the order in which they

16    were filed.  So, I have Docket Number 111, which is Jambulat

17    Tkhilaishvili's motion *in limine* to exclude David's statement

18    regarding prior uncharged acts attributed to Jambulat.

19          MR. TUMPOSKY:  Yes, your Honor.  We did address that

20    to a certain extent at the pretrial conference, and I did ask

21    for permission to flesh it out a little bit further, and I did

22    that, and I can certainly discuss it further with the Court, if

23    the Court would like.  But basically I think it's important to

24    get a sense of why the Government is offering David's

25    statement, because they are actually not, as I understand it,

1    offering it as a co-conspirator statement.  They are offering

2    it to show the effect that it had on the listener, Victor

3    Torosyan.  So, in that context they are not offering it for the

4    truth of the matter, but rather to show the effect it had on

5    Victor.  So, in that context I don't think we are analyzing it

6    as a co-conspirator statement but, rather, something that

7    simply isn't hearsay.  And for the limited purpose of showing

8    the effect on Victor Torosyan, I think it's important to

9    understand that a statement that David makes that has an effect

10   on Victor Torosyan is only relevant to the extent that it

11   reflects David's intent and not James's intent.

12        THE COURT:  The conspiracy's intent.  I mean, we are

13   just going in a circle on this.  But I want to understand the

14   Government's position.

15        MS. KAPLAN:  I think, your Honor, we are introducing

16   it as both a co-conspirator statement and it goes to his state

17   of mind.  And with respect to whether it's prejudicial, the

18   witness is going to testify that the same statement was made to

19   him.  So, it's not just during this consensually recorded

20   conversation, but he's going to testify about the same

21   information.

22        THE COURT:  My view is it comes in as a co-conspirator

23   statement.  At the present state of the record I have to make

24   the determinations for Petrozziello purposes at the end of all

25   of the evidence in the case, and I will make that

1     determination.  But, based on what I now know, I view this as a

2     co-conspirator statement and to the degree it is offered to

3     show and provide likely impact upon the alleged victim in this

4     case.  So, I am not going to exclude that.

5           MR. TUMPOSKY:  Well, to the extent that it's a

6     co-conspirator statement, your Honor, is the Government going

7     to be permitted to argue that it is evidence that, in fact,

8     Jambulat shot someone?  In other words --

9           THE COURT:  I don't think the Government is going to

10    be arguing that.

11          Are you, Ms. Kaplan?

12          MS. KAPLAN:  No.

13          MR. TUMPOSKY:  Thank you.

14          THE COURT:  This is not a case about whether he shot

15    somebody.  It is a case about whether or not he believed that

16    he had induced in the victim or the conspirators believed they

17    induced in the victim a fear of economic harm.

18          MR. TUMPOSKY:  And then I would request at the

19    appropriate time the Court instruct the limited purpose for

20    which the evidence is being --

21          THE COURT:  You will prompt me when you want it.

22          MR. TUMPOSKY:  I will.

23          THE COURT:  Is it going to come out in the opening

24    statement, Ms. Kaplan?

25          MS. KAPLAN:  Yes, your Honor, I believe so.

1          THE COURT:  So, how?  Explain it to me.  Explain to me

2     whether or not I should be telling the jury in the course of

3     your opening statement that this is offered to show the impact

4     and not necessarily for the truth of the matter with respect to

5     Jambulat.

6          MS. KAPLAN:  Well, I am going to be telling the jury

7     what the victim in this case was told by the defendants, and

8     that was one of the things that he was told.

9          THE COURT:  I would put it at a high level of

10     generality to avoid having me interrupt your opening statement.

11     All right?

12          MS. KAPLAN:  Okay.

13          THE COURT:  So, I am denying Motion Number 111 having

14     to do with this prior statement.

15          Now I turn to -- 112 is the contested jury

16     instruction.  I don't think I have to deal with that right now.

17          MS. KAPLAN:  And I will file something in connection

18     with that, your Honor.

19          THE COURT:  I thought that that was going to be over

20     the weekend.

21          MS. KAPLAN:  Oh, I apologize.  But I have it ready, so

22     I can file it by the end of today.

23          THE COURT:  All right.  I don't think that it needs

24     attention right now, does it?

25          MR. TUMPOSKY:  As long as your Honor does not intend

1     to do a preliminary instruction on the substantive law.

2           THE COURT:  No, I will not fine-tune it at this point.

3     So, I am reserving with respect to -- well, it is not even a

4     motion, so I look forward to receiving the Government's

5     response, and I will deal with that in due course.

6           Now, turning to the motion to preclude certain

7     exhibits, I am not sure that I understand what these are, and

8     this is the Government's Motion Number 115.  First, the draft

9     operating agreement, an email, is somebody going to be offering

10    that?

11          I'm sorry, Ms. Kaplan.  You wanted to respond?

12          MS. KAPLAN:  No, your Honor.  I thought you were

13    asking me.

14          MR. CRUZ:  Your Honor, with regard to the first two, I

15    believe, exhibits that the Government is objecting to, after

16    review my sense is that this is more in line with impeachment

17    information, and if that's the case I will lay the proper

18    foundation at the time and then confront the witness with the

19    information and then perhaps seek to admit it at that point.

20          THE COURT:  All right.  So, the way I would like to

21    deal with that is, if you are going to be introducing it, tell

22    me ahead of time, just so I have got enough time to think about

23    it.

24          MR. CRUZ:  Yes, your Honor.

25          THE COURT:  Now, the transcript issue, I am not

1    sure -- and it is presented, I guess, by Number 118.  What is

2    going on here?

3            MR. CRUZ:  Your Honor, I filed this motion.  The issue

4    is this, your Honor:  The transcripts, as the Court is aware,

5    were allowed to be corrected, amended, edited.

6            THE COURT:  No, I think I understand the state of

7    play.

8            MR. CRUZ:  Yes, your Honor.

9            THE COURT:  And so, are you going to offer somebody

10   else who says that they are inaccurate in their final form?

11           MR. CRUZ:  What I am asking the Court to do is this:

12   I am asking the Court to admit or allow admission of the

13   original transcripts, not the ones that were edited by the

14   complaining witness in this case, and I believe that's for

15   obvious reasons.  I understand that an independent translator

16   did some checking of those corrections and edits, but I was

17   concerned because one of the comments that I received on that

18   process from the Government is that the complaining witness

19   apparently heard things that the independent translator did not

20   after listening to these tapes, and I'm not comfortable with

21   agreeing to let those edited transcripts into evidence.

22           THE COURT:  What are you going to do in the

23   alternative?  I have a live witness who is going to say -- I

24   gather is going to say, "I have reviewed the transcript, and

25   this is a fair and accurate reporting of what I said and

1    translation of what I said," right?  That is the state of the

2    play, okay?

3              MR. CRUZ:  Yes.

4              THE COURT:  Ordinarily, when we have disputes over

5    transcripts one side has an expert, the other side has an

6    expert about it.  But I don't exclude, nor do I ordinarily use

7    the original or a draft transcript, which is what you call the

8    original is.  So, I am not sure I would exclude it, except that

9    there has been a modification here.

10             MR. CRUZ:  Well, your Honor, what I would like, and

11   maybe we can accomplish this by questioning the witness at the

12   proper time, but what I would like is something on the record

13   stating that this translator did review all -- every single

14   edit that Mr. Torosyan made, and that they are accurate, and

15   that they are not deferring to Mr. Torosyan's conclusions or

16   suggestions about what should come next in terms of a word or a

17   phrase.

18             THE COURT:  Let me just understand who the translator

19   is.  Who is the translator?

20             MS. KAPLAN:  There are two translators.  There is an

21   original translator, and then there is a reviewer down at

22   Headquarters.  Maybe I could help a little.  I think Mr. Cruz

23   is not understanding what I told him over the weekend.  First

24   of all, when we were in court on Thursday I did make the

25   representation that the translator had, in fact, reviewed the

1   edits and did agree that those were proper edits.  In addition,

2   she went back through the --

3         THE COURT:  The "she" is the person at Headquarters?

4         MS. KAPLAN:  Yes.  Her name is Alla Lubinsky.  She's

5   at FBI Headquarters.  And she went back through the two

6   transcripts and she now put on the cover page of the

7   transcript, "Operational review date," which is dated as of

8   April 24th, it's supposed to be 2017, which means that she

9   reviewed the entire transcript with the edits of the

10  cooperating witness and agreed that they were accurate.

11        THE COURT:  So, the short of it is that is their

12  proffer.  Do you want to inquire of that translator?

13        MR. CRUZ:  I do, your Honor.

14        THE COURT:  Let's get the translator up here, make her

15  available.

16        MS. KAPLAN:  So, she is in Headquarters, and we have

17  called her and told her she needs to get on a flight and be

18  here for tomorrow morning.  I know you want a witness, and what

19  I am prepared to do is put the witness on, the victim in the

20  case.  I don't think we'll get as far as the transcripts, but I

21  would just ask if we start him, and then we'd have to bring in

22  the translator, and maybe Mr. Cruz would take a voir dire

23  without having to put her on the stand in front of the jury.  I

24  don't know.

25        THE COURT:  Okay.

1           MR. CRUZ:  That's fine, your Honor.

2           THE COURT:  But she is on call -- she is going to be

3    here, and her schedule is now subject to the Court, and so we

4    will see how it works.  But we are spending the whole day

5    tomorrow.

6           MS. KAPLAN:  Okay.

7           THE COURT:  So, she should be available, certainly

8    know that she is available then and perhaps longer.

9           MR. CRUZ:  That's fine, your Honor.

10          THE COURT:  So, the short of it is my view is that the

11   testimony with respect to the conversation comes from the

12   witness who was a percipient participant in that conversation,

13   and the transcript is that witness's conversation.  If that

14   transcript is subject to attack in some form, you can do it,

15   but it comes in because the witness now says that, "This is

16   what I did," and Ms. Kaplan has taken this prophylactic in

17   response to your request of having someone review it again.  My

18   guess is we will do it on voir dire, but I don't know.

19          MR. CRUZ:  I understand, your Honor.

20          THE COURT:  So, the motion *in limine* here is denied,

21   subject to voir dire of the -- or subject to further

22   development by the translator who reviewed the transcript.

23   That is Number 118.  And that, I think, takes care of all of

24   115 too, because it was a lingering issue on 115, which is the

25   admission of certain exhibits.

1          MR. CRUZ:  Yes, your Honor.

2          MS. KAPLAN:  I think there's one more that

3    Mr. Tumposky filed.  No?

4          THE COURT:  Right.

5          MS. KAPLAN:  Oh, I'm sorry.

6          MR. CRUZ:  Actually, your Honor, before we move to the

7    next one, I think there was a reference in that last motion *in*

8    *limine* by the Government to certain attorney witnesses and

9    issues that may arise because of calling the attorney

10   witnesses.  I'll just let the Court know on both parties'

11   witness lists there are a number of attorneys.  My

12   understanding, and I have been dealing with some of these

13   individuals, is that they wanted releases or authorizations

14   from whomever their clients were at the time, whether they were

15   Mr. Tkhilaishvili or Mr. Torosyan, regarding questioning about

16   their representation during the formation of the company.  I'm

17   not sure how this is going to proceed, but I think the

18   Government just wanted to flag the issue for the Court that

19   there may be some issues concerning attorney-client privilege

20   and whether or not these witnesses can speak to that.

21         THE COURT:  I will hear from the witnesses about

22   whether or not they feel themselves bound in some way by

23   confidentiality requirements, and if they do and it seems

24   plausible, I am likely to simply say you can't inquire into the

25   areas in which they say that they are going to assert

1    confidentiality in the presence of the jury.

2         MR. CRUZ:  Yes, your Honor.

3         THE COURT:  We may have to do it by voir dire, we may

4    not.  But, in any event, I do not want the jury exposed to and

5    subject to some adverse inference because somebody asserts a

6    proper evidentiary privilege.  We will get that settled ahead

7    of time and then go from there.

8         MR. CRUZ:  Yes.  And we have tried to settle this by

9    stipulations, but we haven't come to an agreement.

10        THE COURT:  So, with that further refinement, we have

11   dealt with 118 and 115.  Now, the next one is 116, which is

12   eliciting exculpatory statements from prosecution witnesses.

13   This is the Government's motion.

14        Let me understand from the defendant's point of view,

15   what do you think you are going to be doing?

16        MR. TUMPOSKY:  So, what I think I am going to be doing

17   is cross-examining the alleged victim in the case about his

18   conversation with the defendant, not simply introduce the

19   defendant's exculpatory denials as substantive evidence of some

20   kind.  That is not why I am doing it.  I am introducing the

21   statements of the alleged victim within that conversation,

22   Victor Torosyan.  I'm certainly not offering it for the truth.

23   In fact, I contend that most of what he said during that

24   conversation was false.

25             As far as the statements of the defendant himself, I'm

1   not offering those for the truth either.  I'm offering those to

2   show the effect that they had on the alleged victim, in other

3   words, that he became frustrated by the fact that he was unable

4   to elicit the admission that he was looking for and, therefore,

5   has a motive to, if you will, put his thumb on the scale when

6   he testifies about things that aren't on the table to secure a

7   conviction, and then also, based on his conviction, have an

8   advantage in the civil case.  So, I'm not offering any of these

9   statements for the truth of the matter asserted, your Honor.

10          THE COURT:  Well, I am not sure exactly where I fall

11  on this.  There is not going to be a transcript, right?

12          MR. TUMPOSKY:  I would not enter the transcript, no.

13  I would be questioning about the conversation.  That's my

14  intent.

15          THE COURT:  Depending on how the Government's case

16  comes in, I think I may permit this on the grounds that

17  Mr. Tumposky has identified, and if I need to give the jury

18  some instruction, I will give the jury some instruction.  But

19  it seems to me to be fair impeachment under these circumstances

20  with particular bias that the victim-witness has here.  All

21  right.  So, I am denying the Government's Motion *in Limine*

22  Number 116 with the instructions that I have just given with

23  respect to that.

24          Now, we have 117, which is the one dealing with the

25  qualifications.  Is there going to be some dispute about

1    whether he was qualified or not qualified or what?

2         MR. TUMPOSKY:  Well, I guess I could let the

3    Government speak to that, your Honor.

4         THE COURT:  Ms. Kaplan.

5         MS. KAPLAN:  Well, I believe that the testimony is

6    going to be that David -- is that the defendants sold

7    themselves to the victim in this case as having prior

8    experience with a Suboxone clinic, and that's part of the

9    reason why the victim invested in this company and allowed --

10        THE COURT:  But is there a dispute about whether they

11   had the qualifications or, more accurately, I guess whether

12   David had the qualifications?

13        MS. KAPLAN:  I think every witness would say they had

14   no experience running Suboxone clinics.

15        THE COURT:  Experience is one thing.  I am talking

16   about some sort of qualification -- I think I'm talking about

17   some sort of qualification, because what the defendant Jambulat

18   says is any reference to qualifications or lack thereof to

19   either obtain a license or to be the owner of one.  Now, is

20   there some licensing scheme that the Government contends they

21   could not qualify for?

22        MS. KAPLAN:  No.  No, that won't come up with respect

23   to Jambulat Tkhilaishvili.

24        THE COURT:  What about David?

25        MS. KAPLAN:  And it won't come up with respect to --

1   well, and this is an issue that I meant to raise, your Honor.

2   There is Allied Health Clinic and then there's Health

3   Management Group.  Health Management Group was the management

4   company for the clinic.

5        THE COURT:  Right.

6        MS. KAPLAN:  The Class A members on the clinic was the

7   victim, Mr. Torosyan, and Jambulat Tkhilaishvili, and the

8   Class A members on the management company were David

9   Tkhilaishvili and Mr. Torosyan.  The reason for that, which I

10  had not intended to get into, and I would, you know, caution

11  the defendants about this, is that David Tkhilaishvili, because

12  of his criminal history, could not be on the clinic's operating

13  agreement because he could not obtain a license through the

14  Department of Health.

15       THE COURT:  Because of the prior conviction?

16       MS. KAPLAN:  Yes.  Now, I was not going to get into

17  that, but I just bring that to your Honor's attention.

18       THE COURT:  So, let me see if I can review the bidding

19  and see where the parties stand.  The Government intends to

20  elicit from various witnesses that the defendants had no real

21  experience in this area.  Am I correct?

22       MS. KAPLAN:  Correct.  David Tkhilaishvili had been a

23  part of Davis Clinic prior to that, but Jambulat had not.

24       THE COURT:  That seems fair game, it seems to me.  The

25  larger issue of licensure and so on seems like a door-opening

1    exercise, frankly.  If somebody opens it up with respect to

2    David, then the Government can properly introduce that he could

3    not be licensed in this area.  But I am not sure that this is

4    so critical, but perhaps you will explain it.

5         MR. TUMPOSKY:  Well, I don't know how the Government

6    is going to approach it, but I am anticipating an argument to

7    the effect of that essentially there was some misrepresentation

8    made by David on behalf of James to the alleged victim, that

9    James, in fact, had no experience and his day job was in a

10   pizza store, and, therefore, this somehow deceived the alleged

11   victim into forming this company.

12        THE COURT:  What's wrong with that?

13        MR. TUMPOSKY:  Because it's not relevant to whether

14   they extorted him.

15        THE COURT:  Oh, it is.  It is relevant to the

16   formation of the relationship among the parties, and to the

17   degree that it involved some sort of misrepresentation of the

18   qualifications, broadly conceived, of one of the participants,

19   and it was relied upon or said to be relied upon by the victim,

20   that seems to me comes in.  I am not going to spend a lot of

21   time, or I am not going to encourage you to spend a lot of

22   time, the parties, on corporate formation.  This is not about

23   that.  But I will permit some evidence to come in in this

24   setting with respect to that.

25        MR. CRUZ:  Your Honor, I understand, and I just want

1      to be clear on one point regarding this licensure issue.  I do

2      want to touch on that in terms of my opening statement, because

3      the facts, as I understand them, are that, because of David

4      Tkhilaishvili's involvement in the prior Davis Clinic, he had

5      the knowledge to get the licensure proceeding --

6                THE COURT:  But he couldn't do it, as I am told, or at

7      least there is evidence that he couldn't do it.  Let me just

8      say this, so we will frame the discussion further.

9                MR. CRUZ:  Yes.

10               THE COURT:  You can touch it, but it is a third rail,

11     so make your choice about that.  To the degree that you touch

12     it in a way that suggests that he was qualified at the time to

13     be directly involved in the management of the clinic, I am

14     told -- I am innocent of knowledge of regulatory schemes that

15     the state has for this -- but I am told that if he has got a

16     prior conviction he can't do it.

17               MR. CRUZ:  He can't be part of the management of the

18     clinic.  That's correct.  He can be part of the management, of

19     the management group.

20               THE COURT:  Was the representation made that he would

21     be part of the management of the clinic?

22               MR. CRUZ:  The representation was made that he would

23     be part of the management of the Health Management Group, not

24     part of the clinic.

25               THE COURT:  Well, all I can say is you touch it and

1    you may find yourself subject to the kinds of shocks that

2    people get from touching a third rail.

3         MR. CRUZ:  I understand that, your Honor, and I will

4    lay it out for the Court now.  The bottom line is that the

5    complaining witness in the case had no knowledge or relevant

6    experience about how to start the licensing process.

7         THE COURT:  Right.  So, he consulted someone who had

8    no proper way to become a manager of this clinic, that is

9    David, that is someone who has a prior conviction.  I am just

10   telling you so that you understand that you are, to mix my

11   metaphors, walking along the precipice.

12        MR. CRUZ:  I understand that, your Honor.  And, again,

13   the reason why I am bringing this up is because the

14   Government's argument, in part, is going to be that David and

15   James didn't bring anything to the table in terms of any

16   investment of time, knowledge, effort or money into the clinic

17   and the Management Group, and my contention is the value that

18   they brought to the undertaking was David's prior experience

19   with Davis Clinic and his knowledge of how to get one of these

20   businesses up and running.  That's essentially it.  I'm not

21   suggesting that he could apply and get the license himself.

22   I'm just suggesting that he had the knowledge to get the

23   process started.

24        THE COURT:  To the degree that it trips into this

25   area, you are in danger zone, red zone, but you know where the

1    danger is, you will make your own choices, and those choices

2    may lead to consequences that are not ones that you would

3    embrace.  That is all I can say in response to it.  This is

4    kind of back and forth, and I will try to manage the problems

5    as best I can, but I would be very careful about suggesting

6    that he could be involved in the management as that is

7    understood, because it is going to elicit a response that says

8    this guy could not, and he knew it at the time, be part of the

9    actual management because he could not get a license, he

10    couldn't be a signatory on the license, as I understand that

11    theory.

12           MR. CRUZ:  Yes, your Honor.  And I'm not going to be

13    suggesting that.

14           THE COURT:  Okay.  But I would be very careful about

15    suggesting anything that could be understood by anyone that it

16    amounts to that.

17           MR. CRUZ:  I understand, your Honor.

18           THE COURT:  Okay.  So, with respect to Number 117 the

19    larger question of the qualifications or abilities of the

20    defendants to participate meaningfully in the business are, it

21    seems to me, fair game, and I am not going to exclude it.  With

22    respect to the question of whether or not in specific the

23    defendant David is in a position to obtain a license or to be

24    an owner of one, I can't rule on that until I have got some

25    idea of precisely what is offered in this area.

1          MR. TUMPOSKY:  Can I make one additional point on

2    this, your Honor?

3          THE COURT:  All right.

4          MR. TUMPOSKY:  It's the form that the evidence would

5    come in also, because if I am to understand what is likely to

6    be how the testimony develops, is that Victor will testify that

7    he later learned or later heard that James had no experience,

8    or whatever, and the only way the evidence would be relevant,

9    it would have to come in for its truth that, in fact, he had no

10   experience.  It's not the effect on Victor at the time.

11         THE COURT:  If there is evidence that he does not have

12   the experience, and I understand the Government to be saying

13   something like that, then I will permit it.

14         MR. TUMPOSKY:  But not Victor heard from someone that

15   he didn't have the experience.  It has to be direct evidence of

16   some sort, I would think.

17         THE COURT:  Maybe.

18         Ms. Kaplan.

19         MS. KAPLAN:  I hadn't really thought about that, your

20   Honor.  I suppose we could put an attorney on to deal with that

21   issue, but --

22         THE COURT:  What I understand Mr. Tumposky to be

23   saying is, if there is a dispute about his experience, that is,

24   that there were false premises or false pretenses under which

25   the victim was induced to invest, that is one thing.  It is

1  another thing that the victim later heard from somebody else

2  that he did not have the qualifications.  So, I guess I am

3  asking what your evidence of lack of qualification is going to

4  be.

5        MS. KAPLAN:  I believe it's from the attorneys who

6  said David Tkhilaishvili cannot be a Class A member for the

7  clinic because of his prior --

8        THE COURT:  That is the only?

9        MS. KAPLAN:  Yes.  But the victim will also testify

10  that it became evident very quickly by the fact that

11  Mr. Jambulat Tkhilaishvili was never even at the clinic, that

12  he had no experience running a clinic.  So, it's also based on

13  his observations and --

14        THE COURT:  I am going to permit some of this.  That

15  if it is pure hearsay, somebody says he can't do it, that is a

16  different matter.

17        MR. TUMPOSKY:  Thank you.

18        THE COURT:  And before any such testimony is offered

19  by any other witness, I want to know --

20        MS. KAPLAN:  As I said, I was not planning on going

21  near that, because I knew it would elicit testimony that it had

22  to do with his criminal history.

23        THE COURT:  All right.  So, I think we have dealt with

24  all of the motions *in limine*.  I have given instructions with

25  respect to Number 117, and that is I am denying that motion

1   with the refinements that we have discussed here and the

2   cautionary instructions with respect to the potential for

3   consequences that may not be ones the defendants would like,

4   but there are consequences by choices that people make,

5   strategic choices that they make during the course of trial,

6   and one cannot say that these are not knowing under these

7   circumstances.

8          Anything else that we need to take up before the jury

9   is brought in?

10          MS. KAPLAN:  Just a business matter, your Honor.  Will

11   we be able to move the podium prior to opening statements?

12          THE COURT:  Yes.  Anything else?

13          MS. KAPLAN:  No, your Honor.

14          (The Court conferred with the Clerk off the record)

15          THE COURT:  Okay.  So, five or ten minutes for the

16   jury.

17          THE CLERK:  All rise.

18      (The Honorable Court exited the courtroom at 9:42 a.m.)

19                  (End of requested excerpt)

20

21

22

23

24

25

1

C E R T I F I C A T E

2

3

4        I, Brenda K. Hancock, RMR, CRR and Official Court

5   Reporter of the United States District Court, do hereby certify

6   that the foregoing transcript constitutes, to the best of my

7   skill and ability, a true and accurate transcription of my

8   stenotype notes taken in the matter of *United State of America*

9   *v. Tkhilaishvili, et al.*, No. 1:16-cr-10134-DPW.

10

11

12

13

14   Date:    04/18/18              /s/ *Brenda K. Hancock*
                                    Brenda K. Hancock, RMR, CRR
15                                  Official Court Reporter

16

17

18

19

20

21

22

23

24

25